J. W. THOMAS v. THE KANSAS CITY ELEVATED RAILWAY COMPANY.

No. 15,773.    (99 Pac. 594.)

SYLLABUS BY THE COURT.

PERSONAL INJURIES — *Contributory Negligence of a Pedestrian.* Under the facts stated in the opinion it is held as a matter of law that the plaintiff in error was negligent in attempting to cross a street-car track in front of an approaching car, with which he collided to his injury.

Error from Wyandotte court of common pleas; JAMES S. GIBSON, judge *pro tem.* Opinion filed January 12, 1909. Affirmed.

*J. E. Cobbey, C. Angevine, J. K. Cubbison,* and *Joseph Taggart,* for plaintiff in error.

*O. L. Miller, W. J. Buchan, C. A. Miller,* and *Samuel Maher,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: We have here the question whether the plaintiff used ordinary care in attempting to cross a street-car track in front of a moving car, with which he collided to his injury, the court of common pleas having sustained a demurrer to his evidence in an action for damages against the street-car company.

This is the story: The plaintiff was aboard a car going north on Sixth street, in Kansas City. The car stopped for the discharge of passengers at the north side of Ann avenue, which extends east and west across Sixth street. The plaintiff alighted from the rear end of the car, stepped eastward away from the car four or five feet, turned his head, looked north and saw another car, about 175 feet away, coming south on a parallel track west of the one on which his car stood. It was drizzling rain. He turned up his coat collar, turned down the rim of his hat and started around the car to the right, toward the southwest, in a diagonal direction across the intersection of the two streets, and took a gait of about five miles per hour. The car he left moved north. When he reached the west rail of the east track he again saw the south-bound car. The front ends of the two cars were then about opposite each other. The view was unobstructed and the plaintiff saw the on-coming car clearly and distinctly. It was then only forty-five feet away. The inside rails of the two tracks were about five feet apart. He did not stop, but went on, was struck just after he had passed over the east rail of the west track and was thrown into the air by the bumper or corner of the car. In falling he caught on the fender, and was finally thrown off between the two tracks. Altogether he was knocked and dragged and rolled about seventy-five feet from the place where he was struck. The car which struck him was running at a high and dangerous speed, estimated at from eighteen to twenty-five miles an hour. The witnesses substantially agree upon twenty miles per hour. After the plaintiff was struck the car proceeded some twenty feet, when the motorman of a second north-bound car signalled the motorman of the south-bound car by calling out, waving his left hand and pointing downward toward the plaintiff. Some thirty or thirty-five feet from the place where the plaintiff was struck the speed of the south-bound car

was slackened, and it stopped at a distance estimated to be from 150 to possibly 300 feet from the point of collision. The plaintiff says that when he first left the car in which he had been riding he noted the fact that the south-bound car was coming down past the car he had left, and noted that if he crossed the track he would be in front of the south-bound car or else would have to wait until it passed. At the west rail of the east track he glanced up the track long enough to see that the car was still coming and to take note of its speed. He thought it was running at a reasonable speed, seven or eight miles per hour, but he could not tell how fast it was going. He says he realized at the time that he could not tell how fast the car was running, with it coming down head on, but he relied upon his supposition, did not pause to make any further investigation as to how fast it was running, and without looking again went on, with the result stated. A man who preceded the plaintiff in leaving the north-bound car crossed the west track ahead of the plaintiff in safety.

The court is unable to interpret these facts in any reasonable way which will clear the plaintiff of contributory negligence. Without taking the precaution which the situation required, and which his own state of mind should have prompted him to observe, he took the chances of a race with the car.

The plaintiff had the right to begin his journey with the assumption that cars on the next track would be run at a reasonable rate of speed and would be under ready control when approaching street crossings. But such an assumption can not be relied upon as a guide to conduct or as an excuse for taking a risk after knowledge or fair warning to the contrary. Due care requires that a man shall look for approaching cars before crossing a railway track. This duty would be barren of obligation if he were allowed to ignore the result of the use of his faculties and to act upon assumptions contrary to facts of easy apprehension. If he sees a

22—79 KAN.

car coming, the duty arises to make some estimate of its speed and of the distance it has to come before he attempts to cross. Distances and speed are matters of the commonest daily observation. Men no less than the lower animals have been trained at the peril of survival to regard them ever since the species arose. A man may not be a good judge of either, but he must suffer the consequences if he makes a mistake which a reasonably prudent man would not have made. Then the mind must be actively employed on the side of safety when danger threatens. A man can not prudently leave a place of safety and knowingly proceed to place himself in the pathway of a swiftly moving peril when he is fully aware that he is not well informed respecting its progress, that he has placed himself at a disadvantage to observe and estimate its imminence, and that every step forward increases this disadvantage, while it increases the hazard, without tarrying long enough to gain some further assurance.

The plaintiff failed at all these points. He deliberately stepped away from his own car and looked for the approaching car, fully sensible of the importance of his precaution. He saw the car at a comparatively short distance from him, and made a calculation respecting his movements. He had a fair side view—the best for his purpose. The car was running nearly thirty feet per second, several times as fast as he had any right to expect to see, and by the time he arrived at the second point of observation it was almost upon him. What he then saw was amply sufficient to put him on guard against defects in his first observation, if there were any. The distance covered was out of all proportion to what he had the right to suppose. A reasonable man expecting a car to approach at no more than the ordinary rate of speed, and expecting to see it a safe distance up the track as the result of that speed, would have been surprised at least that the car should suddenly be so near. Seeing the car where it could not possibly have been, judging from his first observa-

Thomas v. Railway Co.

tion, he ought to have attended carefully to the facts. He makes no claim that he was deceived by any expectation that the car would slow down or had reduced its speed. He saw it still coming. He admits he did not know how fast it was coming and was conscious of the fact that he was handicapped in his means of observation. Such being the situation and the state of his mind, it was imperative upon him that he should pause and see what he ought to do, and not plunge on relying upon a supposition.

The law is clear and could not be made clearer by coining new phrases to express it. The facts are accepted as the plaintiff and his witnesses state them to be up to the time he was struck, and after that they present no difficulty. An analysis of decided cases involving different facts would not elucidate the matter. Mindful of its duty when dealing with a demurrer to evidence the court holds as a matter of law that the plaintiff was guilty of contributory negligence, negligence on the part of the defendant being taken for granted.

Some arguments are advanced to avoid the legal consequence of contributory negligence on the part of the plaintiff. It is said the defendant was guilty of recklessness and wantonness, but recovery is not asked upon that ground. The doctrine of the last clear chance is invoked, but, assuming that after the plaintiff was struck he might have been protected by stopping the car, the abstract is barren of any evidence showing how quickly the car could have been or ought to have been stopped after the motorman might or should have known the plaintiff was still engaged with the car. A warning to the plaintiff before the car struck him that it was coming was useless because he saw and knew it was coming, and the effect which a signal might have had upon the plaintiff if one had been given is purely speculative.

The judgment of the court of common pleas is affirmed.